UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
TRAFIGURA AG,                          :

        Plaintiff,                     :

  - against -                          :

SIGMUND COMMUNECCI LIMITED,             :

        Defendant.                     :
-------------------------------------------------X



09 CV _____
ECF CASE

## VERIFIED COMPLAINT

Plaintiff, TRAFIGURA AG, ("Plaintiff," or "Sellers"), by and through its attorneys,

Tisdale Law Offices LLC, as and for its Verified Complaint against the Defendant, SIGMUND

COMMUNECCI LIMITED, ("Defendant," or "Buyers"), alleges, upon information and belief,

as follows:

    1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.

    2.     At all material times to this action, Plaintiff was a foreign company duly

organized and operating under foreign law with an office and place of business in Stamford, CT.

    3.     Upon information and belief, at all material times, Defendant was a foreign

corporation or other business entity organized and existing under foreign law with an office and

place of business in Lagos, Nigeria.

    4.     Pursuant to the terms of a CIF sales contract dated September 18, which was

concluded on August 27, 2008, Plaintiff, as sellers, agreed to sell a cargo of "30,000 metric tones

plus or minus 10 pct in Seller's option" of jet (oil) to the Defendant. *See Sales Contract Dated*

*September 18, 2008 attached as Exhibit "1."*

5.     The Contract specified that delivery of the cargo would be at "one safe port offshore Cotonou, Benin at one Safe berth designated by the Buyer."

6.     The Contract specified that "The Buyer shall give full written discharge instructions for the nominated discharge port of the seller at least 3 days prior to the Vessel's ETA at the discharge port and the Seller shall not be responsible for any delays that arise due to the buyer's failure to do so."

7.     The Contract required the Seller to "nominate the performing vessel no later than 3 days prior to vessel's ETA at the discharge port and required the Buyer to "notify the Seller of its acceptance of any nominated or substituted vessel without delay –such acceptance shall not be unreasonably withheld."

8.     The Contract specified that "The buyer shall be responsible for:  (A) Procuring a safe berth reachable on arrival at the discharge port at which the vessel can, when fully laden, always lie and discharge afloat."

9.     The Contract specified that "The buyer shall be responsible for:  (B) Procuring and maintaining in good working order all connections, hoses, pipes and other equipment necessary to discharge the produce at the berth."

10.     The Contract specified that "The buyer shall be responsible for:  (C) Arranging for the berthing of the vessel upon the arrival of the vessel at the discharge port."

11.     The Contract specified that "The Buyer shall be allowed laytime of 36 hours SHINC, weather permitting berthing / discharging or not, pro rata for a part cargo."

12.     The Contract stated that "The Buyer shall pay discharge port demurrage to the Seller:  (A) At the performing charter party rate or, if the performing charter party is a time charter, the applicable rate shall be the daily hire plus bunker costs."

13.     The Contract stated that "If the buyer fails to pay demurrage within 30 days (or when otherwise demanded in accordance with this Clause), the Buyer shall pay interest on the overdue payment at the interest rate specified in Clause 10 [sic] (Payment)."

14.     The interest rate specified in Clause 9 of the Contract stated that "the interest rate will be the JP Morgan Chase Bank prime rate as posted on the day payment is due plus two percent."

15.     The Contract is governed by the Law of the State of New York without giving effect to its conflicts of law principles.

16.     Each party to the Contract "irrevocably submits to the exclusive jurisdiction of any federal court of competent jurisdiction situated in the Borough of Manhattan, New York."

17.     In order to perform its obligations under the Contract, the Plaintiff chartered the FREEJA BREEZE under the BP Voyage form from a third party to carry the cargo to the Buyer's nominated discharge port of Cotonou.

18.     The demurrage rate in the charter party for the FREEJA BREEZE, was incorporated into the Contract between the Plaintiff and Defendant herein.

19.     During the course of discharging operations, the Vessel discharged at a very slow rate and as a result, the Buyer exceeded the laytime allowance specified in its Contract with the Plaintiff which resulted in demurrage charges against the Buyer for its account.

20      As a result of the Buyer's exceeding laytime at the discharge port, it incurred demurrage charges payable to the Plaintiff.

21.     The Plaintiff has demanded payment of the outstanding demurrage charges and has given the Defendant significant time and opportunity to make such payment.

22.     In breach of the Contract, the Buyer has failed to remit the demurrage charges to the Plaintiff, despite that such payment remains due and outstanding and chargeable to the Buyer's account under the Contractual terms.

23.     As a result of the Defendant's breaches of the Contract, the Plaintiff has sustained damages in the total principal amount of $1,021,225.01 exclusive of interest, costs and fees.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE DEFENDANT

24.     The Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-23 in this Complaint as if fully pleaded herein.

25.     The Defendant's failure to remit the demurrage payments due and owing under its Contract with the Plaintiff is in breach of its obligations there under and has resulted in charges against the Plaintiff which are for the account of the Defendant.

26.     As a result of the Defendant's breaches, the Plaintiff has sustained damages in the total principal amount of USD $1,021,225.01 for discharge port demurrage, plus interest at the Contractual rate of 6% from the date of payment until such time as payment is made. *See Demurrage Invoice, attached as Exhibit 2.*

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE DEFENDANT – SECURITY FOR CLAIMS

27.     The Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-25 in this Complaint as if fully pleaded herein.

28.     Despite due demand, the Defendant has failed to pay the amounts due to the Plaintiff under the Contract.

29.     As best as can now be estimated, the Plaintiff expects to recover $1,021,225.01 on its principal claim as well as interest in the amount of $37,489.13 (6% from the due date of payment until such time as payment is made – calculated through June 30, 2009) for a total

amount of US $1,058,714.14, which is subject to increase to include additional interest until such time as payment is made.

30.    Any payment by Defendant of payments under the contract or other sums to a non-domestic entity, or any payment by a non-domestic entity to the Defendant, made in U.S. Dollars and effected by international electronic funds transfer must pass through an intermediary bank, or banks, primarily in New York City.  The Clearing House Interbank Payment System ("CHIPS") represents that it processes 95% of those transfers.

31.    On the basis of the foregoing, Plaintiff submits that one or more electronic funds transfers in U.S. Dollars will be made from, or to, the Defendant and will be routed through an intermediary bank or banks in New York City within the next month or months and will be subject by Process of Maritime Attachment and Garnishment issued pursuant to Supplemental Rule B.

32.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant.

33.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any property of the Defendant held by any

garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint, failing which default judgment be entered against it in the sum of **$1,058,714.14.**

B.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$1,058,714.14** belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.    That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

D.      That the Plaintiff have such other, further and different relief as the Court deems

just, proper and equitable.

Dated: May 28, 2009                          The Plaintiff,
        New York, NY                          TRAFIGURA AG

                          By:     _____
                                  Claurisse Campanale Orozco (CC 3581)
                                  Thomas L. Tisdale (TT 5263)
                                  TISDALE LAW OFFICES LLC
                                  24 West 40th Street, 17th Floor
                                  New York, NY  10018
                                  (212) 354-0025 – phone
                                  (212) 869-0067 – fax
                                  corozco@tisdale-law.com
                                  ttisdale@tisdale-law.com

## ATTORNEY'S VERIFICATION

State of New York    )

)      ss.:      City of New York

County of New York  )

1. My name is Claurisse Campanale-Orozco.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an Associate in the firm of Tisdale Law Offices, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      May 28, 2009
New York, NY

_____

Claurisse Campanale-Orozco

# EXHIBIT 1

# TRAFIGURA

## TRAFIGURA AG BRANCH OFFICE STAMFORD

ONE STAMFORD PLAZA, 263 TRESSER BOULEVARD, 16TH FLOOR, STAMFORD, CT 06901, USA  TEL: +(1) 203 355 7200 – FAX: +(1) 203 355 7201

***ALL CONTRACTUAL CORRESPONDENCE TO BE FAXED TO +44-207-170-7818***

TO        :        SIGMUND COMMUNECCI LIMITED
ATTN    :        BENEDICT PETERS
EMAIL  :        BENEDICT@SIGMUNDGROUP.COM

CC        :        MITCHELL@SIGMUNDGROUP.COM

CC        :        TRAFIGURA LTD.
ATTN    :        CONTRACT ADMINISTRATION: CAMERON BEVERIDGE / ALANA THOMPSON
FAX       :        +44 207 170 7818
E-MAIL  :        CONTRACTADMINISTRATIONS@TRAFIGURA.COM

DATE    :        18TH SEPTEMBER 2008

RE        :        OUR CONTRACT NO. 182921
                    YOUR CONTRACT NO. (PLEASE CONFIRM)

TRAFIGURA AG IS PLEASED TO CONFIRM THE FOLLOWING CIF SALE TRANSACTION CONCLUDED BETWEEN OUR TWO COMPANIES ON 27TH AUGUST 2008

IF THE SELLER AND THE BROKER AND/OR THE BUYER ISSUE CONTRACTS FOR THE ABOVE REFERENCED DEAL, THE SELLER'S CONTRACT PREVAILS AND CANCELS AND SUPERSEDES ANY BROKER CORRESPONDENCE IN RELATION TO THIS AGREEMENT. THE BROKER'S CONTRACT SHALL BE FOR THE SOLE PURPOSE OF DOCUMENTING COMMISSION, IF ANY. THE BUYER'S CONTRACT SHALL HAVE NO EFFECT AND THE SELLER SHALL BE BOUND ONLY BY THE TERMS AND CONDITIONS SET OUT HEREIN

### 1. SELLER

TRAFIGURA AG
263 TRESSER BOULEVARD
16TH FLOOR
STAMFORD, CT 06901

### 2. BUYER

SIGMUND COMMUNECCI LIMITED
5/7 DOCKYARD ROAD
APAPA-LAGOS
PORT HARCOURT
LAGOS
NIGERIA

### 3. PRODUCT

JET (THE "PRODUCT")

### 4. QUALITY

DPK, MEETING NNPC / DPR SPECIFICATIONS

### 5. QUANTITY

30,000 METRIC TONNES PLUS OR MINUS 10 PCT IN SELLERS OPTION

## 6. DELIVERY

IN ONE LOT AS FULL OR PART CARGO CIF ONE SAFE PORT OFFSHORE COTONOU, BENIN AT ONE SAFE BERTH DESIGNATED BY THE BUYER, ESTIMATED TO ARRIVE (TENDER NOR) AT THE DISCHARGE PORT DURING THE PERIOD 15TH – 20TH SEPTEMBER 2008, WITHOUT GUARANTEE ("ESTIMATED ARRIVAL PERIOD").

THE BUYER SHALL GIVE FULL WRITTEN DISCHARGE INSTRUCTIONS FOR THE NOMINATED DISCHARGE PORT TO THE SELLER AT LEAST 3 DAYS PRIOR TO THE VESSEL'S ETA AT THE DISCHARGE PORT AND THE SELLER SHALL NOT BE RESPONSIBLE FOR ANY DELAYS THAT ARISE DUE TO THE BUYER'S FAILURE TO DO SO.

ALL CHARGES AT THE DISCHARGE PORT, OTHER THAN THOSE DEFINED BY WORLDSCALE AS BEING FOR OWNERS' ACCOUNT (INCLUDING THE EXPENSE IF ANY, OF SHIFTING BERTH AT THE DISCHARGE PORT, UNLESS SUCH SHIFT SHALL BE FOR THE VESSELS' PURPOSES), SHALL BE PAID BY BUYERS.

## 7. NOMINATIONS

THE SELLER SHALL NOMINATE THE PERFORMING VESSEL NO LATER THAN 3 DAYS PRIOR TO VESSEL'S ETA AT THE DISCHARGE PORT

THE SELLER SHALL HAVE THE RIGHT TO SUBSTITUTE THE NOMINATED VESSEL AT ANY TIME PRIOR TO THE LAST ETA OF THE LAST NOMINATED VESSEL AT THE DISCHARGE PORT.

THE BUYER SHALL NOTIFY THE SELLER OF ITS ACCEPTANCE OF ANY NOMINATED OR SUBSTITUTED VESSEL WITHOUT DELAY - SUCH ACCEPTANCE SHALL NOT BE UNREASONABLY WITHHELD.

## 8. PRICE

THE UNIT PRICE IN US DOLLARS PER METRIC TONNE CIF ONE SAFE PORT/BERTH OFFSHORE COTONOU, BENIN SHALL BE EQUAL TO THE AVERAGE OF THE MEAN QUOTATIONS FOR "JET" AS PUBLISHED IN PLATT'S EUROPEAN MARKETSCAN UNDER THE HEADING "CARGOES CIF NWE / BASIS ARA" PLUS A PREMIUM OF US DOLLARS 38.00 (THIRTY EIGHT POINT ZERO ZERO) PER METRIC TONNE.

THE APPLICABLE QUOTATIONS SHALL BE THE QUOTATION PUBLISHED ON THE DAY SELLER'S VESSEL TENDERS NOTICE OF READINESS AT THE DISCHARGE LOCATION (NOR DATE), THE TWO (2) PUBLISHED QUOTATIONS IMMEDIATELY PRECEDING THE NOR DATE, AND THE TWO (2) PUBLISHED QUOTATIONS IMMEDIATELY FOLLOWING THE NOR DATE (2,1,2)

SHOULD THE NOR DATE FALL ON A SATURDAY OR NON-MONDAY PUBLIC HOLIDAY IN WHICH THERE IS NO PUBLISHED QUOTATION, THE APPLICABLE QUOTATIONS SHALL BE THE THREE (3) PUBLISHED QUOTATIONS IMMEDIATELY PRECEDING THE NOR DATE, AND THE TWO (2) PUBLISHED QUOTATIONS IMMEDIATELY FOLLOWING THE NOR DATE (3,0,2)

SHOULD THE NOR DATE FALL ON A SUNDAY OR MONDAY PUBLIC HOLIDAY IN WHICH THERE IS NO PUBLISHED QUOTATION, THE APPLICABLE QUOTATIONS SHALL BE THE TWO (2) PUBLISHED QUOTATIONS IMMEDIATELY PRECEDING THE NOR DATE, AND THE THREE (3) PUBLISHED QUOTATIONS IMMEDIATELY FOLLOWING THE NOR DATE (2,0,3)

THE PRICE SHALL BE EXPRESSED TO THREE (3) DECIMAL PLACES AS FOLLOWS:

(A)     IF THE FOURTH DECIMAL PLACE IS FIVE (5) OR GREATER, THE THIRD DECIMAL PLACE SHALL BE ROUNDED UP TO THE NEXT NUMERICAL DIGIT; AND

(B)     IF THE FOURTH DECIMAL PLACE IS LESS THAN FIVE (5), THE THIRD DECIMAL PLACE SHALL REMAIN UNCHANGED.

## 9. PAYMENT

BUYER SHALL PAY THE PRICE VIA TELEGRAPHIC TRANSFER OF IMMEDIATELY AVAILABLE (SAME DAY) FEDERAL FUNDS IN U.S. DOLLARS, WITHOUT ANY WITHHOLDING, OFFSET, COUNTERCLAIM OR DEDUCTION OF ANY KIND, INTO SELLER'S NOMINATED BANK ACCOUNT WITH FULL VALUE LATEST 10

CALENDAR DAYS AFTER THE DATE THE SELLER'S VESSEL TENDERS NOTICE OF READINESS AT THE DISCHARGE LOCATION (NOR DATE = DAY ZERO) AGAINST PRESENTATION BY THE SELLER OF:)

A. SELLER'S COMMERCIAL INVOICE (TELEX) FACSIMILE ACCEPTABLE).

B. CERTIFICATE OF QUALITY OR INDEPENDENT INSPECTOR'S QUALITY REPORT AT LOADPORT (TELEX / FACSIMILE ACCEPTABLE).

C. CERTIFICATE OF QUANTITY OR INDEPENDENT INSPECTOR'S QUANTITY REPORT AT [LOADPORT/DISCHARGE PORT] (TELEX/FACSIMILE ACCEPTABLE).

D. 3/3 CLEAN ON BOARD B/L'S ISSUED OR ENDORSED TO THE ORDER OF BUYER OR BUYER'S BANK (OR 2/3 ORIGINAL B/L'S AND MASTER'S /AGENT'S RECEIPT FOR MISSING 1/3 ORIGINAL B/L).

E.  ORIGINAL CERTIFICATE OF ORIGIN.

F.  ORIGINAL CERTIFICATE OF INSURANCE

SELLER SHALL PRESENT A PROVISIONAL INVOICE FOR PAYMENT.  THE PROVISIONAL INVOICE SHALL BE CALCULATED IN ACCORDANCE WITH CLAUSE (8) USING THE QUOTATION PUBLISHED ON 27 AUGUST 2008 AND ISSUED IMMEDIATELY FOR BUYER TO ISSUE THE STANDBY LETTER AGAINST.

IF A TOTAL OR PARTIAL LOSS OF THE CARRYING VESSEL AND/OR THE PRODUCT OCCURS, THE BUYER SHALL PAY THE SELLER FOR THE PRODUCT IN ACCORDANCE WITH THE PAYMENT PROVISIONS HEREIN AND:

(A)    IF QUANTITY IS TO BE DETERMINED ON OUTTURN OR IF IT IS A PART CARGO WITH NO SEPARATE BILL OF LADING:

    (I)    THE BILL OF LADING QUANTITY OR, IN THE CASE OF PART CARGOES WITH NO SEPARATE BILL OF LADING, THE NOMINATED QUANTITY OR (IF NO QUANTITY IS NOMINATED) THE MEAN CONTRACT QUANTITY SHALL BE FINAL AND BINDING FOR ALL PURPOSES ON THE PARTIES (SAVE FOR FRAUD OR MANIFEST ERROR);

    (II)    THE PRICE SHALL BE CALCULATED IN ACCORDANCE WITH THE PRICE CLAUSE BY REFERENCE TO THE RELEVANT QUANTITY AS SPECIFIED IN (I) ABOVE; AND

    (III)    THE SELLER SHALL NOT BE REQUIRED TO PRESENT A CERTIFICATE OF QUANTITY OR INDEPENDENT INSPECTOR'S QUANTITY REPORT OR ANY OTHER DOCUMENTS THAT CAN NO LONGER BE PROCURED BY THE SELLER FOR PAYMENT AND ANY PAYMENT INSTRUMENT (SUCH AS A DOCUMENTARY LETTER OF CREDIT) SHALL IMMEDIATELY BE MODIFIED ACCORDINGLY;

(B)    IF THE PRICE OR PAYMENT DATE REQUIRES AN NOR DATE AND/OR DISCHARGE DATE, SUCH NOR AND/OR DISCHARGE DATE(S) SHALL BE DEEMED TO BE THE LAST DAY REFERRED TO IN THE DELIVERY CLAUSE HEREIN; AND

(C)    THE SELLER SHALL PROVIDE THE BUYER WITH THE CARGO DOCUMENTATION AND INSURANCE CERTIFICATE IN GOOD TIME TO ENABLE THE BUYER TO ENTER A CLAIM WITH THE INSURERS.

IF PAYMENT FALLS DUE ON A SUNDAY OR A MONDAY NON-BUSINESS DAY, THEN PAYMENT SHALL BE MADE ON THE FIRST FOLLOWING BUSINESS DAY.  IF PAYMENT FALLS ON A SATURDAY OR NON-MONDAY HOLIDAY, THEN PAYMENT SHALL BE MADE ON THE PRECEDING BUSINESS DAY.  'BUSINESS DAY' MEANS A 24-HOUR PERIOD ENDING AT 5:00 P.M. EST ON A WEEKDAY ON WHICH BANKS ARE OPEN FOR GENERAL COMMERCIAL BUSINESS IN NEW YORK.

IF PAYMENT IS NOT RECEIVED WHEN DUE, BUYER SHALL INCUR INTEREST ON THE OUTSTANDING BALANCE FROM THE DAY THAT PAYMENT IS DUE UNTIL THE DATE THAT PAYMENT IS ACTUALLY RECEIVED BY SELLER INTO ITS NOMINATED BANK ACCOUNT SET FORTH BELOW. THE INTEREST RATE WILL BE THE JP MORGAN CHASE BANK PRIME RATE AS POSTED ON THE DAY PAYMENT IS DUE PLUS TWO PERCENT.

THE FOREGOING SHALL NOT BE CONSTRUED BY THE BUYER AS AN INDICATION OF THE SELLER'S WILLINGNESS TO PROVIDE EXTENDED CREDIT AS A MATTER OF COURSE.

3

## 10. CREDIT

THE BUYER SHALL PROVIDE TO THE SELLER SECURITY IN RESPECT OF ITS PAYMENT OBLIGATIONS BY MEANS OF A CONFIRMED AND IRREVOCABLE DOCUMENTARY LETTER OF CREDIT OPENED BY A FIRST CLASS EUROPEAN BANK ACCEPTABLE TO SELLER AND IN A FORM ACCEPTABLE TO SELLER AND CONFIRMED BY A FIRST CLASS EUROPEAN BANK ACCEPTABLE TO SELLER TO SELLER'S NOMINATED BANK, BY LATEST 1 NEW YORK BANKING DAY AFTER SELLER ISSUES PROVISIONAL INVOICE AND TIME SHALL BE OF THE ESSENCE IN THIS RESPECT. THE BUYER SHALL BE LIABLE FOR ALL LETTER OF CREDIT CHARGES AS WELL AS CONFIRMATION CHARGES.

IF THE BUYER FAILS FOR WHATEVER REASON TO PROCURE THE OPENING (AND CONFIRMATION) OF THE DOCUMENTARY LETTER OF CREDIT IMMEDIATELY, THE SELLER SHALL HAVE THE RIGHT TO TERMINATE THE CONTRACT FORTHWITH WITHOUT IN ANY WAY LIMITING ANY OTHER REMEDIES AVAILABLE TO THE SELLER.

NOTWITHSTANDING AND WITHOUT PREJUDICE TO THE ABOVE, THE SELLER SHALL HAVE NO OBLIGATION TO DELIVER THE PRODUCT UNLESS OR UNTIL THE SELLER RECEIVES A COMPLIANT DOCUMENTARY LETTER OF CREDIT IN ACCORDANCE WITH THE ABOVE AND, IN THE EVENT OF ANY DELAY BY THE BUYER, THE SELLER MAY, AT ITS OPTION, EXTEND THE TIME FOR THE PERFORMANCE OF ANY OF ITS OBLIGATIONS UNDER THE CONTRACT. THE BUYER SHALL BE LIABLE FOR ANY LOSS OR DELAY ARISING AS A RESULT, WHICH (IF KNOWN AT THE TIME) SHALL BE INVOICED TO THE BUYER AND PAYABLE AS PART OF THE PRICE.

## 11. REQUEST FOR FINANCIAL ASSURANCES

SELLER MAY, IN ITS SOLE DISCRETION AND UPON NOTICE TO BUYER, REQUIRE THAT BUYER PROVIDE IT WITH SATISFACTORY SECURITY IN AN AMOUNT EQUAL TO THE EXCESS OF SELLER'S MARK TO MARKET EXPOSURE IN RESPECT OF ALL CONTRACTS WITH BUYER, AS REASONABLY DETERMINED BY SELLER, OVER THE AGGREGATE CREDIT LINE GRANTED TO BUYER. BUYER SHALL PROVIDE SELLER WITH ADDITIONAL SECURITY TO THE EXTENT THAT THERE IS A SHORTFALL IN THE AMOUNT NECESSARY TO COVER SELLER'S MARKET EXPOSURE FROM TIME TO TIME.

IN ADDITION, SELLER MAY, IN ITS SOLE DISCRETION AND UPON NOTICE TO BUYER OR ITS GUARANTOR, REQUIRE THAT BUYER OR ITS GUARANTOR PROVIDE IT WITH ADEQUATE ASSURANCES OF BUYER'S OR ITS GUARANTOR'S ABILITY TO PERFORM ANY OF ITS OBLIGATIONS UNDER A CONTRACT OR GUARANTY, RESPECTIVELY. ADEQUATE ASSURANCE MEANS SECURITY IN AN AMOUNT AND FORMAT AND FROM AN ENTITY ACCEPTABLE TO SELLER, EACH AS DETERMINED IN SELLER'S SOLE DISCRETION, PURSUANT TO CLAUSE 11 (CREDIT).

## 12. INSPECTION

THE SELLER SHALL APPOINT AND INSTRUCT AN INTERNATIONALLY RECOGNISED INDEPENDENT INSPECTOR TO DETERMINE THE QUANTITY AND QUALITY OF THE PRODUCT AT THE LOADPORT IN ACCORDANCE WITH THE DETERMINATION OF QUANTITY AND QUALITY CLAUSE (THE "INDEPENDENT INSPECTOR").

THE INDEPENDENT INSPECTOR SHALL BE ACCEPTABLE TO BOTH PARTIES, SUCH ACCEPTANCE NOT TO BE UNREASONABLY WITHHELD. ALL INSPECTION COSTS SHALL BE SHARED EQUALLY BETWEEN THE SELLER AND THE BUYER.

## 13. DETERMINATION OF QUANTITY AND QUALITY

THE INDEPENDENT INSPECTOR SHALL DETERMINE:

    (A) THE QUALITY OF THE PRODUCT AT THE LOADPORT USING THE CUSTOMARY METHODS, PRACTICE AND PROCEDURE AT THE LOADPORT

    AND

    (B) THE QUANTITY OF THE PRODUCT AT THE LOADPORT USING

    THE CUSTOMARY METHODS, PRACTICE AND PROCEDURE AT THE LOADPORT

SUCH DETERMINATIONS SHALL BE REPORTED ON THE CERTIFICATES OF QUALITY AND QUANTITY RESPECTIVELY, WHICH SHALL BE FINAL AND BINDING ON THE PARTIES FOR ALL PURPOSES SAVE FOR FRAUD OR MANIFEST ERROR.

IF REQUESTED BY SELLER AT THE DISPORT, BUYER SHALL MAKE ALL NECESSARY ARRANGEMENTS FOR SELLER'S AUTHORIZED CHARTERER'S REPRESENTATIVE TO GAIN ACCESS TO THE TERMINAL FACILITIES

THE BUYER SHALL SUBMIT TO THE SELLER ANY CLAIM AGAINST THE SELLER REGARDING THE QUALITY OR QUANTITY OF ANY PRODUCTS DELIVERED IN WRITING, TOGETHER WITH SUPPORTING DOCUMENTATION AND REASONABLE DETAILS OF THE FACTS ON WHICH THE CLAIM IS BASED, WITHIN 30 DAYS FROM THE DATE OF COMPLETION OF DISCHARGE (DISCONNECTION OF HOSES), FAILING WHICH THE BUYER'S CLAIM SHALL BE WAIVED AND ABSOLUTELY BARRED.

### 14. BERTH:

THE BUYER SHALL BE RESPONSIBLE FOR:

(A) PROCURING A SAFE BERTH REACHABLE ON ARRIVAL AT THE DISCHARGE PORT AT WHICH THE VESSEL CAN, WHEN FULLY LADEN, ALWAYS LIE AND DISCHARGE AFLOAT.

(B) PROCURING AND MAINTAINING IN GOOD WORKING ORDER ALL CONNECTIONS, HOSES, PIPES AND OTHER EQUIPMENT NECESSARY TO DISCHARGE THE PRODUCT AT THE BERTH.

(C) ARRANGING FOR THE BERTHING OF THE VESSEL UPON THE ARRIVAL OF THE VESSEL AT THE DISCHARGE PORT.

### 15. LAYTIME

THE VESSEL SHALL TENDER NOR TO THE DISCHARGE PORT AND THE BUYER AT THE DISCHARGE PORT UPON ARRIVAL OR CUSTOMARY ANCHORAGE OR OTHER WAITING AREA OR, IN THE EVENT OF LIGHTERING OPERATIONS, SUCH OTHER PLACE.

THE BUYER SHALL BE ALLOWED LAYTIME OF 36 HOURS SHINC, WEATHER PERMITTING BERTHING / DISCHARGING OR NOT, PRORATA FOR PART CARGO.

FOR THE PURPOSES OF COMPUTING LAYTIME AND DEMURRAGE, TIME SHALL COMMENCE 6 HOURS AFTER NOR HAS BEEN TENDERED OR WHEN THE VESSEL IS ALL FAST ALONGSIDE THE BERTH, WHICHEVER IS THE EARLIER AND SHALL CEASE WHEN HOSES ARE DISCONNECTED. IF THE DELIVERY OF THE DOCUMENTS REQUIRED BY THE VESSEL FOR CLEARANCE/DEPARTURE IS DELAYED IN EXCESS OF 2 HRS FROM HOSE DISCONNECTION, LAYTIME SHALL RECOMMENCE UPON THE EXPIRATION OF SUCH ALLOWANCE AND CONTINUE TO RUN UNTIL CORRECT AND SIGNED DOCUMENTATION IS DELIVERED ON BOARD THE VESSEL.

### LIGHTERING AND TRANSHIPMENT

FOR ANY LIGHTERING UNDERTAKEN AT THE REQUEST OF THE BUYER, THE EXPENSE THEREOF SHALL BE FOR THE BUYER'S ACCOUNT AND ALL TIME EXPENDED IN CONNECTION WITH SUCH LIGHTERING SHALL COUNT AS RUNNING HOURS FOR THE PURPOSES OF CALCULATING THE LIABILITY FOR DEMURRAGE.

ANY LIGHTERING OPERATIONS SHALL BE CARRIED OUT IN ACCORDANCE WITH THE PROCEDURES SET OUT IN THE ICS/OCIMF SHIP-TO-SHIP TRANSFER GUIDES. THE LIGHTERING VESSEL SHALL BE SUBJECT TO THE SELLER'S PRIOR WRITTEN ACCEPTANCE.

ANY SHIP-TO-SHIP TRANSFER (TRANSHIPMENT) OPERATIONS SHALL BE CARRIED OUT IN ACCORDANCE WITH THE PROCEDURES SET OUT IN THE ICS/OCIMF SHIP-TO- SHIP TRANSFER GUIDES. THE RECEIVING VESSEL SHALL BE SUBJECT TO THE SELLER'S PRIOR WRITTEN ACCEPTANCE.

EXCEPT IN RELATION TO ANY SHIP-TO-SHIP TRANSFER CARRIED OUT AT THE REQUEST OF AND FOR THE PURPOSES OF THE SELLER, ANY SHIP-TO-SHIP TRANSFER OPERATION SHALL ONLY BE CARRIED OUT WITH THE SELLER'S EXPRESS CONSENT AND SHALL ONLY BE CARRIED OUT OUTSIDE PORT LIMITS AND AT THE BUYER'S SOLE RISK AND THE BUYER SHALL BE LIABLE TO THE SELLER IN RESPECT OF ALL TIME SPENT IN EXCESS OF PERMITTED RUNNING HOURS CALCULATED AT THE RELEVANT DEMURRAGE RATE NOTWITHSTANDING THE VESSEL IS OUTSIDE PORT LIMITS, AND FOR ALL AND ANY LOSSES,

COSTS, DAMAGES AND PROCEEDINGS ARISING THEREFROM AND SHALL INDEMNIFY THE SELLER IN RESPECT THEREOF. THIS CLAUSE SHALL NOT BE INCLUDED WITHIN THE SCOPE OF THE LIMITATION OF LIABILITY CLAUSE.

ALL TIME USED (WEATHER PERMITTING OR NOT) IN CONNECTION WITH LIGHTERING OR SHIP-TO SHIP OPERATIONS (SUCH TIME SHALL INCLUDE ANY TIME SPENT WAITING, ANY STEAMING TIME AND SHALL OTHERWISE COMMENCE 6 HOURS AFTER NOR HAS BEEN TENDERED OR WHEN VESSEL IS MOORED TO THE LIGHTERING VESSEL, WHICHEVER IS EARLIER AND SHALL END WHEN THE VESSEL IS UNMOORED FROM THE LAST CARGO RECEIVING VESSEL) SHALL COUNT AS LAYTIME, OR, IF THE VESSEL IS ON DEMURRAGE, AS TIME ON DEMURRAGE;

EXCEPT IN RELATION TO ANY LIGHTERING CARRIED OUT AT THE REQUEST OF AND FOR THE PURPOSES OF THE SELLER, ANY LIGHTERING OPERATION CARRIED OUT SHALL BE AT THE BUYER'S RISK AND THE BUYER SHALL BE LIABLE TO THE SELLER IN RESPECT OF ANY LOSSES, COSTS, DAMAGES AND PROCEEDINGS ARISING THEREFROM AND SHALL INDEMNIFY THE SELLER IN RESPECT THEREOF. THIS CLAUSE SHALL NOT BE INCLUDED WITHIN THE SCOPE OF THE LIMITATION OF LIABILITY CLAUSE.

## 16. DEMURRAGE

THE BUYER SHALL PAY DISCHARGE PORT DEMURRAGE TO THE SELLER:

(A)     AT THE PERFORMING CHARTERPARTY RATE OR, IF THE PERFORMING CHARTERPARTY IS A TIMECHARTER, THE APPLICABLE RATE SHALL BE THE DAILY HIRE PLUS BUNKER COSTS. NO OTHER TERMS, EXCEPTIONS OR LIMITATIONS OF THE CHARTER PARTY ARE INCORPORATED INTO THIS CONTRACT UNLESS EXPRESSLY PROVIDED.

(B)     SUBJECT TO THE FOLLOWING PROVISIONS OF THIS CLAUSE, WITHIN 30 DAYS FROM RECEIPT OF THE SELLER'S DOCUMENTED CLAIM

IF THE BUYER FAILS TO PAY DEMURRAGE WITHIN 30 DAYS (OR WHEN OTHERWISE DEMANDED IN ACCORDANCE WITH THIS CLAUSE), THE BUYER SHALL PAY INTEREST ON THE OVERDUE PAYMENT AT THE INTEREST RATE SPECIFIED IN CLAUSE 10 (PAYMENT).

## 17. TITLE

TITLE TO THE PRODUCT SHALL PASS FROM THE SELLER TO THE BUYER WHEN THE PRODUCT PASSES THE PERMANENT FLANGE CONNECTION OF THE VESSEL'S INTAKE HOSE AT THE LOADPORT.

THE FOLLOWING PROVISION SHALL APPLY IF THE SELLER SHIPS AN UNSEGREGATED PART CARGO:  IF THE PRODUCT FORMS PART OF A LARGER BULK OF CARGO OWNED BY THE SELLER AND/OR THIRD PARTIES (THE "ENTIRE BULK") AND IS NOT IDENTIFIABLE OR ASCERTAINABLE AS A DIFFERENTIATED PART CARGO, DELIVERY SHALL BE DEEMED COMPLETED AND TITLE TO THE PRODUCT SHALL PASS FROM SELLER TO BUYER UPON THE COMPLETION OF LOADING OF THE ENTIRE BULK AND, FOR THE SOLE PURPOSE OF SATISFYING THE CONDITIONS SET OUT IN S.20(1)(A) – (B) OF THE SALE OF GOODS ACT 1979, THE BULK SHALL BE DEEMED IDENTIFIED BY AGREEMENT OF THE PARTIES AND THE PRICE SHALL BE DEEMED TO HAVE BEEN PAID UPON COMPLETION OF LOADING OF THE ENTIRE BULK. [UPON DELIVERY, BUYER SHALL BECOME THE OWNER IN COMMON OF THE ENTIRE BULK AND AT RISK IN RESPECT OF A PERCENTAGE OF THE ENTIRE BULK AS REPRESENTED BY THE BILL OF LADING IN RESPECT OF THE PRODUCT RELATIVE TO ALL OF THE BILLS OF LADING IN RESPECT OF THE ENTIRE BULK.

## 18. RISK

RISK OF LOSS, CONTAMINATION OR DAMAGE TO THE PRODUCT SHALL PASS FROM THE SELLER TO THE BUYER WHEN THE PRODUCT PASSES THE FLANGE CONNECTION OF THE VESSEL'S INTAKE HOSE AT THE LOAD PORT.

## 19. WAR RISKS

THE SELLER SHALL PROCURE AND PAY FOR AN INSURANCE POLICY IN RESPECT OF THE PRODUCT WHICH SHALL PROVIDE COVER AGAINST ALL RISKS (INCLUDING THE RISK OF IN TRANSIT LOSSES, HOWSOEVER CAUSED, IN EXCESS OF 0.5 PCT OF B/L QUANTITY, AND CONTAMINATION IRRESPECTIVE OF PERCENTAGE BUT EXCLUDING WAR, STRIKES, RIOTS, CIVIL COMMOTIONS, BLOCKING AND TRAPPING) TO THE FULL CONTRACT VALUE OF THE PRODUCT PLUS 10 PCT AND COVER THE PRODUCT FROM

PASSING THE PERMANENT FLANGE CONNECTION OF THE VESSEL'S INTAKE HOSE AT THE LOAD PORT TO PASSING THE PERMANENT CONNECTION OF THE VESSEL'S DELIVERY HOSE AT DISCHARGE PORT.

THE SELLER MAY, AT ANY TIME, REFUSE TO DIRECT ANY VESSEL: (A) TO TRANSIT OR PROCEED TO OR REMAIN IN WATERS IF SUCH DIRECTION WOULD INVOLVE A BREACH OF ANY INSTITUTE WARRANTIES (IF APPLICABLE) OR, IN THE SELLER'S OPINION, A RISK TO THE VESSEL'S SAFETY OR A RISK OF ICE DAMAGE TO THE VESSEL, OR CAUSE THE VESSEL TO BE PROXIMATELY LOCATED TO A PLACE IN WHICH A WAR (INCLUDING BUT NOT BE LIMITED TO STATES OF WAR, WAR-LIKE OPERATIONS OR HOSTILITIES, CIVIL STRIFE, TERRORISM OR OTHER POLITICALLY OR RELIGIOUSLY MOTIVATED ACTIVITIES OR PIRACY) IS PRESENT OR IMMINENT; OR (B) TO ANY PLACE TO WHICH THE OWNERS OF THE VESSEL REFUSE TO ALLOW THE VESSEL TO PROCEED OR REMAIN.
NOTWITHSTANDING AND WITHOUT PREJUDICE TO THE ABOVE, IF THE SELLER DIRECTS A VESSEL TO UNDERTAKE OR COMPLETE SUCH A VOYAGE, THE BUYER SHALL REIMBURSE THE SELLER, IMMEDIATELY UPON RECEIPT OF THE SELLER'S INVOICE, FOR ANY COSTS INCURRED BY THE SELLER IN RESPECT OF ANY ADDITIONAL INSURANCE PREMIUM (INCLUDING BUT NOT LIMITED TO ANY AND ALL COSTS IN RESPECT OF WAR RISK INSURANCE AS WELL AS CREW WAR BONUSES OR ANY OTHER BONUSES RELATING TO THE SHIPMENT) AND ANY OTHER SUMS THAT THE SELLER MAY BE REQUIRED TO PAY TO THE VESSEL'S OWNER AND ANY OTHER COSTS AND/OR EXPENSES INCURRED BY THE SELLER.

## 20. IMPORT DUTIES

BUYER SHALL BE THE IMPORTER OF RECORD AND RESPONSIBLE FOR ALL IMPORT ARRANGEMENTS AND DUTIES. BUYER SHALL BE RESPONSIBLE FOR LOCAL GOVERNMENT TAXES, FEES AND RELATED COSTS IN RESPECT OF THE CARGO AT THE DISCHARGE PORT.

BUYER SHALL BE RESPONSIBLE FOR ALL FEDERAL, STATE AND LOCAL EXCISE, MOTOR FUEL, SPECIAL FUEL, DIESEL, GROSS RECEIPTS, AD VALOREM, OIL COMPANY FRANCHISE, ENVIRONMENTAL, SPILL AND SALES AND USE TAXES, HOWEVER DESIGNATED (OTHER THAN TAXES ON SELLER'S INCOME), ARISING FROM OR IMPOSED UPON IMPORTATION OF THE CARGO.

## 21. CLAIMS

IF ANY CLAIMS ARISE UNDER OR IN CONNECTION WITH THIS CONTRACT, THE CLAIMING PARTY SHALL NOTIFY THE OTHER PARTY OF ITS CLAIM IN WRITING WITHIN 6 MONTHS FROM THE DATE OF THE COMPLETION OF FINAL DISCHARGE, FAILING WHICH THE CLAIM SHALL BE DEEMED WAIVED AND ABSOLUTELY BARRED. THIS CLAUSE SHALL NOT APPLY TO: (A) QUALITY AND QUANTITY CLAIMS, WHICH ARE COVERED IN CLAUSE (13); AND (B) CLAIMS IN RESPECT OF DEMURRAGE, PORT COSTS, SHIFTING, DEVIATION, FREIGHT DIFFERENTIAL, HEATING AND/OR AWRP.

IF ANY DISPUTE ARISES UNDER OR IN CONNECTION WITH THIS CONTRACT (SAVE FOR DEMURRAGE AND CLAIMS SUCH AS PORT COSTS, SHIFTING, DEVIATION, FREIGHT DIFFERENTIAL, HEATING AND / OR AWRP), WHICH BOTH PARTIES FAIL TO SETTLE BY NEGOTIATION, THE PARTY SEEKING TO MAKE THE CLAIM SHALL COMMENCE LEGAL PROCEEDINGS WITHIN ONE YEAR FROM THE DATE ON WHICH THE EVENTS GIVING RISE TO THE CLAIM OCCURED. FAILING WHICH THE CLAIM SHALL BE DEEMED WAIVED AND ABSOLUTELY BARRED WITHOUT RECOURSE TO LITIGATION OR ARBITRATION

## 22. LIMITATION OF DAMAGES

NEITHER SELLER NOR BUYER SHALL BE LIABLE FOR SPECIFIC PERFORMANCE, LOST PROFITS OR OTHER BUSINESS INTERRUPTION DAMAGES, OR FOR SPECIAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY OR INDIRECT DAMAGES, IN TORT, CONTRACT OR OTHERWISE, OF ANY KIND, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE PERFORMANCE, THE SUSPENSION OF PERFORMANCE, THE FAILURE TO PERFORM OR THE TERMINATION OF THIS CONTRACT

## 23. DISCLAIMER OF WARRANTIES

OTHER THAN THE WARRANTY OF TITLE AND CONFORMANCE OF THE PRODUCTS TO THE DESCRIPTION STATED HEREIN WITHIN ANY TOLERANCES, SELLER MAKES NO OTHER REPRESENTATION OR WARRANTY, WRITTEN OR ORAL, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATION OR WARRANTY THAT THE PRODUCTS WILL BE FIT, SUITABLE OR MERCHANTABLE FOR Any PARTICULAR PURPOSE. SELLER EXPRESSLY DISCLAIMS ANY WARRANTY AGAINST INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT.

## 24. COMPLIANCE WITH LAWS

EACH PARTY SHALL, IN THE PERFORMANCE OF THIS CONTRACT, COMPLY WITH ALL APPLICABLE LAWS AND REGULATIONS IN EFFECT ON THE DATE THIS CONTRACT IS ENTERED INTO, AND AS THEY MAY BE AMENDED FROM TIME TO TIME.  THE TERM "LAWS AND REGULATIONS" MEANS (I) ANY LAW, STATUTE, REGULATION, CODE, ORDINANCE, LICENSE, DECISION, ORDER, WRIT, INJUNCTION, DECISION, DIRECTIVE, JUDGMENT, POLICY, DECREE AND ANY JUDICIAL OR ADMINISTRATIVE INTERPRETATIONS THEREOF, (II) ANY AGREEMENT, CONCESSION OR ARRANGEMENT WITH A GOVERNMENTAL AUTHORITY, AND (III) ANY APPLICABLE LICENSE, PERMIT OR COMPLIANCE REQUIREMENTS APPLICABLE TO EITHER PARTY.  NOTWITHSTANDING ANYTHING TO THE CONTRARY, THIS CONTRACT SHALL NOT BE INTERPRETED OR APPLIED SO AS TO REQUIRE EITHER PARTY TO DO, OR TO REFRAIN FROM DOING, ANYTHING THAT WOULD CONSTITUTE A VIOLATION OF U.S. LAWS AND REGULATIONS. IN PARTICULAR, AND WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE OIL SOLD UNDER THIS AGREEMENT SHALL NOT BE SOLD, SUPPLIED OR DELIVERED, DIRECTLY OR INDIRECTLY, TO ANY DESTINATION OR REPRESENTATIVE OR SUBJECTS THEREOF PROHIBITED BY U.S. LAWS OR REGULATIONS.

## 25. TAXES

BUYER SHALL BE RESPONSIBLE FOR THE PAYMENT OF ANY TAXES, DUTIES, IMPORTS, FEES, CHARGES AND DUES OF EVERY DESCRIPTION ON THE OIL IMPOSED ON OR AFTER THE TRANSFER OF TITLE TO THE OIL FROM SELLER TO BUYER.   BUYER SHALL INDEMNIFY SELLER IF SELLER IS REQUIRED TO OR PAYS ANY SUCH TAXES, INCLUDING ANY INTEREST OR PENALTIES THEREON.

## 26. REPRESENTATION

EACH PARTY REPRESENTS THAT IT IS AN "ELIGIBLE CONTRACT PARTICIPANT" AS DEFINED IN SECTION 1A (12) OF THE COMMODITY EXCHANGE ACT, AS AMENDED, AND A FORWARD CONTRACT MERCHANT IN RESPECT OF THIS CONTRACT, AND THAT THIS CONTRACT IS A FORWARD CONTRACT FOR PURPOSES OF THE UNITED STATES BANKRUPTCY CODE.

## 27. INDEMNIFICATION

EACH PARTY (REFERRED TO AS THE "INDEMNIFYING PARTY") SHALL INDEMNIFY AND HOLD THE OTHER PARTY (THE "INDEMNIFIED PARTY") HARMLESS FROM AND AGAINST ANY AND ALL LOSSES, COSTS, DAMAGES, AND EXPENSES OF ANY KIND (INCLUDING PENALTIES AND REASONABLE ATTORNEY'S FEES) DIRECTLY OR INDIRECTLY ARISING FROM THE INDEMNIFYING PARTY'S FAILURE TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS WITH RESPECT TO THE SALE, TRANSPORTATION, STORAGE, HANDLING OR DISPOSAL OF THE PRODUCTS, UNLESS SUCH LIABILITY RESULTS FROM THE INDEMNIFIED PARTY'S NEGLIGENCE OR WILLFUL MISCONDUCT.  THE PARTIES' OBLIGATIONS TO DEFEND, INDEMNIFY, AND HOLD EACH OTHER HARMLESS UNDER THE TERMS OF THIS CONTRACT SHALL NOT VEST ANY RIGHTS IN ANY THIRD PARTY (WHETHER A GOVERNMENTAL AUTHORITY OR PRIVATE ENTITY) OR MAKE ANY PARTY A THIRD-PARTY BENEFICIARY.  EACH PARTY AGREES TO NOTIFY THE OTHER AS SOON AS PRACTICABLE AFTER RECEIVING NOTICE OF ANY SUIT BROUGHT AGAINST IT WITHIN THIS INDEMNITY, SHALL FURNISH TO THE OTHER THE COMPLETE DETAILS WITHIN ITS KNOWLEDGE AND SHALL RENDER ALL REASONABLE ASSISTANCE REQUESTED BY THE OTHER IN THE DEFENSE. EACH PARTY SHALL HAVE THE RIGHT BUT NOT THE DUTY TO PARTICIPATE, AT ITS OWN EXPENSE, WITH COUNSEL OF ITS OWN SELECTION, IN THE DEFENSE AND SETTLEMENT THEREOF WITHOUT RELIEVING THE OTHER OF ANY OBLIGATIONS HEREUNDER.

## 28. FORCE MAJEURE

NEITHER SELLER NOR BUYER SHALL BE LIABLE IN DAMAGES OR OTHERWISE FOR ANY FAILURE OR DELAY IN PERFORMANCE, IN WHOLE OR IN PART, OF ANY OBLIGATION OR CONDITION HEREUNDER (OTHER THAN THE OBLIGATION TO MAKE PAYMENT) WHEN SUCH FAILURE OR DELAY IS CAUSED BY AN EVENT OF FORCE MAJEURE, FOR SO LONG AS THE EVENT OF FORCE MAJEURE EXISTS AND TO THE EXTENT PERFORMANCE IS PREVENTED BY THE EVENT OF FORCE MAJEURE; PROVIDED, HOWEVER, THAT THE PARTY UNABLE TO PERFORM SHALL USE ALL COMMERCIALLY REASONABLE EFFORTS TO AVOID OR REMOVE THE EVENT OF FORCE MAJEURE, EXCEPT NO PARTY SHALL BE REQUIRED TO SETTLE AGAINST ITS WILL ANY STRIKE OR LABOR DISPUTE. DURING THE PERIOD THAT PERFORMANCE BY ONE PARTY HAS BEEN SUSPENDED IN WHOLE OR IN PART BY REASON OF AN EVENT OF FORCE MAJEURE, THE OTHER PARTY LIKEWISE MAY SUSPEND THE PERFORMANCE OF ALL OR A PART OF ITS

OBLIGATIONS TO THE EXTENT THAT SUCH SUSPENSION IS COMMERCIALLY REASONABLE, EXCEPT FOR ANY PAYMENT AND INDEMNIFICATION OBLIGATIONS.  THE PARTY RENDERED UNABLE TO PERFORM SHALL GIVE WRITTEN NOTICE TO THE OTHER PARTY AS PROMPTLY AS REASONABLE AND IN NO EVENT LATER THAN 24 HOURS AFTER LEARNING OF THE OCCURRENCE OF A FORCE MAJEURE EVENT, INCLUDING, TO THE EXTENT FEASIBLE, THE DETAILS AND THE EXPECTED DURATION OF THE FORCE MAJEURE EVENT AND THE VOLUME OF PRODUCTS AFFECTED.  THE AFFECTED PARTY SHALL PROMPTLY NOTIFY THE OTHER WHEN THE EVENT OF FORCE MAJEURE IS TERMINATED.

"FORCE MAJEURE" MEANS ANY EVENT, OCCURRENCE OR CIRCUMSTANCE REASONABLY BEYOND THE CONTROL OF THE PARTY CLAIMING FORCE MAJEURE, INCLUDING, FAILURE OR DELAY CAUSED BY OR RESULTING FROM ACTS OF GOD, FIRES, EARTHQUAKES, LIGHTNING, FLOODS, EXPLOSIONS, STORMS, ADVERSE WEATHER, LANDSLIDES AND OTHER NATURAL CALAMITIES, DELAYS OF CARRIERS DUE TO BREAKDOWN, ADVERSE WEATHER OR PERILS OF THE SEA; NAVIGATIONAL ACCIDENTS, OR VESSEL DAMAGE OR LOSS; STRIKES, GRIEVANCES, ACTIONS BY OR AMONG WORKERS OR LOCK-OUTS (WHETHER OR NOT SUCH LABOR DIFFICULTY COULD BE SETTLED BY ACCEDING TO ANY DEMANDS OF ANY SUCH LABOR GROUP OF INDIVIDUALS); ACCIDENTS AT, CLOSING OF, OR RESTRICTIONS UPON THE USE OF MOORING FACILITIES, DOCKS, PORTS, PIPELINES, HARBORS, RAILROADS OR OTHER NAVIGATIONAL OR TRANSPORTATION MECHANISMS; DISRUPTION OR BREAKDOWN OF, EXPLOSIONS OR ACCIDENTS TO WELLS, STORAGE PLANTS, REFINERIES, TERMINALS, MACHINERY OR OTHER FACILITIES; ACTS OF WAR, HOSTILITIES (WHETHER DECLARED OR UNDECLARED), CIVIL COMMOTION, EMBARGOES, BLOCKADES, TERRORISM, SABOTAGE OR ACTS OF THE PUBLIC ENEMY; ANY ACT OR OMISSION OF ANY GOVERNMENTAL AUTHORITY; GOOD FAITH COMPLIANCE WITH ANY ORDER, REQUEST OR DIRECTIVE OF ANY GOVERNMENTAL AUTHORITY; CURTAILMENT, INTERFERENCE, FAILURE OR CESSATION OF SUPPLIES REASONABLY BEYOND THE CONTROL OF A PARTY; OR ANY OTHER CAUSE REASONABLY BEYOND THE CONTROL OF A PARTY, WHETHER SIMILAR OR DISSIMILAR TO THOSE ABOVE AND WHETHER FORESEEABLE OR UNFORESEEABLE, WHICH, BY THE EXERCISE OF DUE DILIGENCE, SUCH PARTY COULD NOT HAVE BEEN ABLE TO AVOID OR OVERCOME.  A PARTY'S INABILITY ECONOMICALLY TO PERFORM ITS OBLIGATIONS UNDER THIS CONTRACT SHALL NOT CONSTITUTE AN EVENT OF FORCE MAJEURE.

IN THE EVENT THAT A PARTY'S PERFORMANCE IS SUSPENDED IN EXCESS OF 30 DAYS FROM THE DATE THAT NOTICE OF FORCE MAJEURE IS GIVEN, AND SO LONG AS SUCH EVENT IS CONTINUING, EITHER PARTY, IN ITS SOLE DISCRETION, MAY TERMINATE THE AFFECTED DELIVERY BY WRITTEN NOTICE TO THE OTHER, AND NEITHER PARTY SHALL HAVE ANY FURTHER LIABILITY TO THE OTHER IN RESPECT OF THAT DELIVERY EXCEPT FOR THE RIGHTS AND OBLIGATIONS PREVIOUSLY ACCRUED UNDER THIS CONTRACT, INCLUDING ANY PAYMENT OBLIGATION.

## 29. DEFAULT AND LIQUIDATION

IN THE EVENT EITHER PARTY (THE "DEFAULTING PARTY") SHALL (1) DEFAULT IN THE PAYMENT OR PERFORMANCE OF ANY MATERIAL OBLIGATION TO THE OTHER PARTY UNDER THIS OR ANY SPECIFIED AGREEMENT; (2) BECOME INSOLVENT, UNABLE TO PAY ITS DEBTS OR ADMIT IN WRITING ITS INABILITY GENERALLY TO PAY ITS DEBTS AS THEY BECOME DUE; (3) ITSELF OR ITS GUARANTOR FILE A PETITION OR OTHERWISE COMMENCE OR AUTHORIZE THE COMMENCEMENT OF A PROCEEDING OR CASE UNDER ANY BANKRUPTCY, INSOLVENCY, REORGANIZATION, OR SIMILAR LAW FOR THE PROTECTION OF CREDITORS, OR HAVE ANY SUCH PETITION FILED OR PROCEEDING OR CASE COMMENCED AGAINST IT; (4) BE DISSOLVED (OTHER THAN PURSUANT TO A CONSOLIDATION, AMALGAMATION OR MERGER); (5) HAVE A LIQUIDATOR, ADMINISTRATOR, RECEIVER OR TRUSTEE APPOINTED WITH RESPECT TO IT OR ANY SUBSTANTIAL PORTION OR ITS PROPERTY OR ASSETS; (6) PROPOSE OR MAKE A GENERAL ASSIGNMENT OR AN ARRANGEMENT OR COMPOSITION WITH OR FOR THE BENEFIT OF ITS CREDITORS; (7) HAVE A SECURED PARTY TAKE POSSESSION OF ALL OR SUBSTANTIALLY ALL OF ITS ASSETS OR HAVE A SEQUESTRATION, EXECUTION, ATTACHMENT, DISTRESS OR OTHER LEGAL PROCESS LEVIED, ENFORCED OR SUED ON OR AGAINST ALL OR SUBSTANTIALLY ALL OF ITS ASSETS; (8) FAIL TO PROVIDE ADEQUATE ASSURANCE OF ITS ABILITY TO PERFORM ALL OF ITS OBLIGATIONS UNDER THIS AGREEMENT WITHIN 48 HOURS OF A REASONABLE REQUEST THEREFORE FROM THE OTHER PARTY WHEN A PARTY HAS REASONABLE GROUNDS FOR INSECURITY WITH RESPECT TO SUCH PARTY'S PERFORMANCE; THEN IF ANY SUCH EVENT OCCURS, WITHOUT LIMITING ANY OTHER RIGHTS THAT MAY BE AVAILABLE, THE PARTY OTHER THAN THE DEFAULTING PARTY (THE "NON-DEFAULTING PARTY") SHALL HAVE THE RIGHT, EXERCISABLE IN ITS SOLE DISCRETION IMMEDIATELY AND AT ANY TIME(S), TO LIQUIDATE THIS AGREEMENT AND ANY OR ALL OTHER AGREEMENTS THEN OUTSTANDING BETWEEN THE PARTIES.  A SETTLEMENT AMOUNT SHALL BE CALCULATED IN A COMMERCIALLY REASONABLE MANNER FOR EACH SUCH LIQUIDATED AND TERMINATED AGREEMENT AND BE PAYABLE BY ONE PARTY TO THE OTHER.  SETTLEMENT AMOUNT SHALL MEAN, WITH RESPECT TO AN AGREEMENT AND THE NON-DEFAULTING PARTY, THE LOSSES AND COSTS (GAINS) EXPRESSED IN U.S. DOLLARS, WHICH SUCH PARTY INCURS AS A RESULT OF THE LIQUIDATION, INCLUDING LOSSES AND COSTS (OR GAINS) BASED UPON THE THEN CURRENT MARKET REPLACEMENT VALUE OF SUCH

9

AGREEMENT (SUCH CURRENT REPLACEMENT VALUE TO BE BASED ON THE AVERAGE OF TWO SPOT PRICES FOR THE PRODUCT FOR THE MONTH OF DEEMED DELIVERY (SUCH DEEMED DELIVERY TO BE AT TRAFIGURA'S OPTION) AS OFFERED IN THE MARKET OR AS PUBLISHED IN A RESPECTED MARKET PUBLICATION, TOGETHER WITH, AT THE NON-DEFAULTING PARTY'S ELECTION BUT WITHOUT DUPLICATION OR LIMITATION, ALL LOSSES AND COSTS WHICH SUCH PARTY INCURS AS A RESULT OF MAINTAINING, TERMINATING, OBTAINING OR RE-ESTABLISHING ANY HEDGE OR RELATED TRADING POSITION. SUCH SETTLEMENT AMOUNTS SHALL BE NETTED TO A SINGLE LIQUIDATED AMOUNT PAYABLE BY THE PARTY WITH THE PAYMENT OBLIGATION TO THE OTHER WITHIN ONE BUSINESS DAY OF THE LIQUIDATION. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT OR ANY OTHER AGREEMENT BETWEEN THE PARTIES, THE NON-DEFAULTING PARTY SHALL SET OFF OR AGGREGATE AS APPROPRIATE, THE SETTLEMENT AMOUNT AND (AT THE ELECTION OF THE NON-DEFAULTING PARTY) ANY OR OTHER AMOUNTS DUE AND OUTSTANDING UNDER THIS AGREEMENT OR ANY OTHER AGREEMENT BETWEEN THE PARTIES, PROVIDED THAT ANY AMOUNTS NOT THEN DUE SHALL BE DISCOUNTED TO PRESENT VALUE. AS SOON AS REASONABLY PRACTICABLE, THE NON-DEFAULTING PARTY SHALL PROVIDE THE DEFAULTING PARTY WITH A STATEMENT, SHOWING IN REASONABLE DETAIL, CALCULATION OF THE SETTLEMENT PAYMENT AND ALL LIQUIDATED AMOUNTS AS DETERMINED AND THE CALCULATION REPRESENTING THE AMOUNT PAYABLE AFTER APPLYING ALL SETOFFS OR MARGIN AMOUNTS. THE NON-DEFAULTING PARTY'S RIGHTS UNDER THIS CLAUSE SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OR EXCLUSION OF, ANY OTHER WHICH THE NON-DEFAULTING PARTY MAY HAVE (WHETHER BY AGREEMENT, OPERATION OF LAW OR OTHERWISE). AFTER A DEFAULT, THE DEFAULTING PARTY SHALL INDEMNIFY AND HOLD THE NON-DEFAULTING PARTY HARMLESS FROM ALL COSTS AND EXPENSES INCURRED BY THE NON-DEFAULTING PARTY IN THE EXERCISE OF THE REMEDIES HEREUNDER.

## 30. ASSIGNABILITY

THIS CONTRACT SHALL BE BINDING UPON THE RESPECTIVE SUCCESSORS AND PERMITTED ASSIGNS OF SELLER AND BUYER. WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER PARTY, WHICH SHALL NOT BE UNREASONABLY WITHHELD, NEITHER PARTY MAY ASSIGN ITS RIGHTS OR OBLIGATIONS UNDER THIS CONTRACT OR CREATE A TRUST OVER IN FULL OR IN PART, EXCEPT THAT SELLER AND ITS ASSIGNS MAY WITHOUT SUCH CONSENT ASSIGN ALL OR A PORTION OF THEIR RIGHTS AND INTERESTS UNDER THIS CONTRACT (INCLUDING ANY COLLATERAL) IN CONNECTION WITH ANY SECURITIZATION OR BANK FUNDING ARRANGEMENT ENTERED INTO BY SELLER OR AN ASSIGNEE OF SELLER. ANY SUCH ASSIGNMENT SHALL NOT AFFECT SELLER'S OBLIGATIONS UNDER THIS CONTRACT. IF WRITTEN CONSENT IS GIVEN FOR AN ASSIGNMENT AND WHENEVER THE ASSIGNMENT IS MADE, THE ASSIGNING PARTY SHALL REMAIN JOINTLY AND SEVERALLY LIABLE WITH THE ASSIGNEE FOR THE FULL PERFORMANCE OF ITS OBLIGATIONS UNDER THIS CONTRACT UNLESS OTHERWISE AGREED.

## 31. OTHER TERMS

WHERE NOT IN CONFLICT OR INCONSISTENT WITH THE ABOVE, INCOTERMS 2000 FOR CIF SALES, WITH ALL LATER AMENDMENTS, ARE INCORPORATED IN THIS AGREEMENT.

THE UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS SHALL NOT APPLY TO THIS CONTRACT.

## 32. LAW AND JURISDICTION

THIS CONTRACT SHALL BE GOVERNED BY, CONSTRUED AND ENFORCED UNDER THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ITS CONFLICTS OF LAWS PRINCIPLES.

EACH PARTY HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL COURT OF COMPETENT JURISDICTION SITUATED IN THE BOROUGH OF MANHATTAN, NEW YORK, OR, IF ANY FEDERAL COURT DECLINES TO EXERCISE OR DOES NOT HAVE JURISDICTION, IN ANY NEW YORK STATE COURT IN THE BOROUGH OF MANHATTAN (WITHOUT RECOURSE TO ARBITRATION UNLESS BOTH PARTIES AGREE IN WRITING), AND TO SERVICE OF PROCESS BY CERTIFIED MAIL, DELIVERED TO THE PARTY AT THE ADDRESS INDICATED ABOVE. EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION TO THE JURISDICTION OF ANY SUCH COURT OR TO VENUE THEREIN OR ANY CLAIM OF INCONVENIENT FORUM OF SUCH COURT OR OF SOVEREIGN IMMUNITY. EACH PARTY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY PROCEEDINGS RELATING TO THIS CONTRACT.

### 33. NOTIFICATIONS:

THE BUYER SHALL GIVE ANY CONTRACTUAL, OPERATIONAL, FINANCIAL, OR PRICING NOTIFICATIONS TO THE SELLER IN WRITING TO THE ADDRESS SPECIFIED IN THIS CONTRACT AND TO THE FOLLOWING FAX NUMBER, TELEX NUMBERS OR EMAIL ADDRESSES (AS APPLICABLE):-

**CONTRACTS:**

| CAMERON BEVERIDGE | TEL: | +44-207-170-7912 |
| ALANA THOMPSON | TEL: | +44-207-173-2287 |
| | FAX: | +44-207-170-7818 |
| | E-MAIL: | CONTRACTADMINISTRATIONS@TRAFIGURA.COM |

**OPERATIONAL / INVOICING CONTACTS:**

| LEWIS DURMAN | TEL: | +44-207-170-7965 |
| | FAX: | +44-207-170-7881 |

**FINANCIAL CONTACT:**

| THOMAS ISITT | TEL: | +44-207-170-7715 |
| | FAX: | +44-207-170-7816 |

**PRICING NOTIFICATIONS**

E-MAIL:    PRICINGDECLARATIONSDISTILLATES@TRAFIGURA.COM

NO NOTICE OR COMMUNICATION FROM THE BUYER TO THE SELLER ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT SHALL BE EFFECTIVE UNLESS OR UNTIL IT HAS BEEN RECEIVED BY THE SELLER IN WRITING WITHIN OFFICE HOURS (0830 TO 1730) IN THE RELEVANT TIME ZONE AND SENT IN ACCORDANCE WITH THE NOTIFICATIONS PROVISIONS HEREIN. ANY NOTICE OR COMMUNICATION ADDRESSED TO SOMEONE OTHER THAN THE SELLER'S REPRESENTATIVE(S) NAMED HEREIN AND/OR NOT GIVEN IN WRITING SHALL BE DEEMED TO HAVE NOT BEEN RECEIVED AND SHALL HAVE NO LEGAL OR CONTRACTUAL FORCE OR EFFECT. ANY NOTICE OR COMMUNICATIONS RECEIVED OUTSIDE OF OFFICE HOURS (AS DESCRIBED ABOVE) SHALL BE DEEMED TO HAVE BEEN RECEIVED ON THE NEXT WORKING DAY.

FOR THE AVOIDANCE OF DOUBT, THE TELEPHONE NUMBERS ABOVE ARE GIVEN FOR INFORMATION ONLY AND NO NOTICES SHALL BE GIVEN BY TELEPHONE TO THE SELLER UNDER THIS CONTRACT. ANY NOTICES OR COMMUNICATIONS FROM THE SELLER TO THE BUYER SHALL BE DEEMED EFFECTIVE AND GIVEN ONCE SENT TO THE BUYER'S ADDRESS, FAX NUMBER, E-MAIL OR TELEX SET OUT IN THIS CONTRACT OR TO SUCH OTHER ADDRESS, FAX NUMBER OR E-MAIL AS THE BUYER MAY SPECIFY IN ADVANCE.

### 34. ENTIRE AGREEMENT AND WAIVERS

THIS CONTRACT CONTAINS THE ENTIRE AGREEMENT OF BOTH PARTIES AND SUPERSEDES ALL CORRESPONDENCE (INCLUDING BUT NOT LIMITED TO BROKER CORRESPONDENCE), REPRESENTATIONS, PRIOR AGREEMENTS, ORAL OR WRITTEN, IN CONNECTION WITH THE SUBJECT MATTER OF THIS CONTRACT. THE PARTIES CONFIRM THAT THEY HAVE NOT ENTERED INTO THIS CONTRACT IN RELIANCE UPON ANY REPRESENTATIONS WHICH MAY HAVE BEEN GIVEN BY THE OTHER PARTY.

NO AMENDMENT, MODIFICATION OR WAIVER OF ANY PROVISION OF THE CONTRACT OR ANY RIGHT, POWER OR REMEDY SHALL BE EFFECTIVE UNLESS MADE EXPRESSLY AND IN WRITING.

NO WAIVER OF ANY BREACH OF ANY PROVISION OF THIS CONTRACT SHALL: (A) BE CONSIDERED TO BE A WAIVER OF ANY SUBSEQUENT OR CONTINUING BREACH OF THAT PROVISION; AND (B) RELEASE, DISCHARGE OR PREJUDICE THE RIGHT OF THE WAIVING PARTY TO REQUIRE STRICT PERFORMANCE BY THE OTHER PARTY OF ANY OTHER PROVISIONS OF THIS CONTRACT.

### 35. SEVERABILITY

THE INVALIDITY, ILLEGALITY OR UNENFORCEABILITY OF ANY ONE OR MORE OF THE PROVISIONS OF THIS CONTRACT SHALL NOT AFFECT OR IMPAIR THE VALIDITY AND ENFORCEABILITY OF ANY OTHER PROVISIONS OF THIS CONTRACT IN ANY WAY WHATSOEVER.

## 36. CONFIRMATION

THIS CONFIRMATION CONSTITUTES THE CONTRACT BETWEEN THE PARTIES AND SUPERSEDES ALL PRIOR COMMUNICATIONS BETWEEN THE PARTIES AND ANY BROKER'S CONFIRMATION. NO OTHER AGREEMENT WILL BE SENT. IF BUYER BELIEVES THAT ANY DIFFERENCES EXIST BETWEEN THE ORAL AGREEMENT OF THE PARTIES' REPRESENTATIVES AND THE CONTENTS OF THIS CONFIRMATION, IT SHALL PROMPTLY NOTIFY SELLER IN WRITING. IF BUYER FAILS TO NOTIFY SELLER IN WRITING OF ANY OBJECTIONS TO THIS CONFIRMATION WITHIN TWO BUSINESS DAYS AFTER RECEIPT, THE ABOVE TERMS WILL BE DEEMED CORRECT AND BINDING. ADDITIONAL OR DIFFERENT TERMS FROM THOSE SET FORTH HEREIN SHALL BE CONSTRUED AS PROPOSALS FOR AMENDMENTS, AND SHALL NOT BECOME PART OF THE CONTRACT UNLESS EXPRESSLY AGREED TO BY SELLER IN A SUPPLEMENTAL CONFIRMATION.

WE ARE PLEASED TO HAVE CONCLUDED THIS BUSINESS TRANSACTION WITH YOU AND LOOK FORWARD TO YOUR WRITTEN CONFIRMATION.

BEST REGARDS

**TRAFIGURA AG**

| | |
|---|---|
| From: | BENEDICT PETERS [benedict@sigmundgroup.com] |
| Sent: | Friday, September 19, 2008 2:29 PM |
| To: | Houston Contract Administrations; MITCHELL@SIGMUNDGROUP.COM |
| Cc: | Yusuf Kwande (Delserve); Warren Kirrane; benedict@sigmundgroup.com |
| Subject: | RE: TRAFIGURA/SIGMUND REVISED CONTRACT |

THE CONTRACT HAS NOT ADDRESSED ALL NESSECARY AMENDMENTS PLEASE REFER TO OUR MAIL RGDS
BP

QUOTE
TO: TRAFIGURA
ATTENTION: YUSSUF KWANDE

REF: CONTRACT NO 182921

PLEASE DO AMEND THE FOLLOWING

2. BUYER
SIGMUND COMMUNECCI LIMITED
5/7 DOCKYARD ROAD
APAPA
LAGOS

3. QUALITY
MEETING DPK/JET /NNPC/DPR SPECIFICATION

6. DELIVERY
BETWEEN 15TH – 21ST MAX GUARRANTEED


INVOICE WILL BE BASED ON OUTTURN BASIS AS WE ARE NOT TAKING ALL THE PRODUCTS ON BOARD
THE VESSEL REFRENCE TELCON OURSELVES AND KARREN

KINDLY AMEND 9C TO REFLECT SAME

DO AMEND THE SAID CONTRACT AND SEND SAME BY MAIL COPING USUAL ADDRESSES RGDS BENEDICT
PETERS UNQUOTE

-----Original Message-----
From: Houston Contract Administrations [mailto:Houston.Contract@trafigura.com]
Sent: Friday, September 19, 2008 11:26 AM
To: BENEDICT@SIGMUNDGROUP.COM; MITCHELL@SIGMUNDGROUP.COM
Subject: TRAFIGURA/SIGMUND REVISED CONTRACT

 <<182921 - Sigmund Communecci Limited (3) REVISED contract (CP name, address).doc>>
Trafigura AG Houston Contract Administration

---------------------------------------------------------------------
This email and any attachments are confidential and access to this email or attachment
by anyone other than the addressee is unauthorised. If you are not the intended
recipient please notify the sender and delete the email including any attachments.
You must not disclose or distribute any of the contents to any other person. Personal
views or opinions are solely those of the author and not of Trafigura. Trafigura does
not guarantee that the integrity of this communication has been maintained nor that the
communication is free of viruses, interceptions or interference. By communicating with
anyone at Trafigura by email, you consent to the monitoring or interception of such
email by Trafigura in accordance with its internal policies.
Unless otherwise stated, any pricing information given in this message is indicative
only, is subject to change and does not constitute an offer to deal at any price
quoted.

TRAFIGURA

## TRAFIGURA AG BRANCH OFFICE STAMFORD

ONE STAMFORD PLAZA, 263 TRESSER BOULEVARD, 16TH FLOOR, STAMFORD, CT 06901, USA  Tel.: +(1) 203 355 7200 – FAX: +(1) 203 355 7201

#### ****ALL CONTRACTUAL CORRESPONDENCE TO BE FAXED TO +44-207-170-7818****

TO        :        SIGMUND COMMUNECCI LIMITED
ATTN    :        BENEDICT PETERS
EMAIL  :        BENEDICT@SIGMUNDGROUP.COM

CC        :        MITCHELL@SIGMUNDGROUP.COM

CC        :        TRAFIGURA LTD.
ATTN    :        CONTRACT ADMINISTRATION: CAMERON BEVERIDGE / ALANA THOMPSON
FAX              +44 207 170 7818
E-MAIL :        CONTRACTADMINISTRATIONS@TRAFIGURA.COM

DATE    :        19TH SEPTEMBER 2008

RE        :        OUR CONTRACT NO. 182921
                    YOUR CONTRACT NO. (PLEASE CONFIRM)

TRAFIGURA AG, HEREBY ACKNOWLEDGES RECEIPT OF YOUR AMENDMENTS TO OUR
CONTRACT RECEIVED 19TH SEPTEMBER 2008 AND HEREWITH CONFIRM OUR ACCEPTANCE OF
THE TERMS THEREIN, SUBJECT TO THE FOLLOWING:

**2. BUYER**
WE AGREE TO YOUR AMENDMENT

**3. QUALITY**
PLEASE NOTE CLAUSE 3. IS LABELLED PRODUCT AND CLAUSE 4. IS LABELLED QUALITY.
FURTHERMORE PLEASE NOTE THAT THE QUALITY/PRODUCT IS ALREADY LISTED AS PER YOUR
AMENDMENT

**6. DELIVERY**
WE AGREE TO AMEND "15TH – 20TH" TO "15TH – 21ST" AND TO DELETE "WITHOUT GUARANTEE"

**9. PAYMENT**
PLEASE AMEND DOCUMENT C TO READ AS FOLLOWS:

"CERTIFICATE OF QUANTITY OR INDEPENDENT INSPECTOR'S QUANTITY REPORT AT DISCHARGE
PORT (TELEX/FACSIMILE ACCEPTABLE)."

**12. INSPECTION**
PARAGRAPH 1: PLEASE DELETE AND REPLACE WITH:

"THE SELLER SHALL APPOINT AND INSTRUCT AN INTERNATIONALLY RECOGNISED
INDEPENDENT INSPECTOR TO DETERMINE THE QUALITY OF THE PRODUCT AT THE LOADPORT
AND QUANTITY OF THE PRODUCT AT THE DISCHARGE LOCATION IN ACCORDANCE WITH THE
DETERMINATION OF QUANTITY AND QUALITY CLAUSE (THE "INDEPENDENT INSPECTOR")."

**13. DETERMINATION OF QUANTITY AND QUALITY**
(B): PLEASE AMEND ALL REFERENCES OF "LOADPORT" TO "DISCHARGE LOCATION"


WE ARE PLEASED TO HAVE CONCLUDED THIS BUSINESS TRANSACTION WITH YOU AND LOOK
FORWARD TO YOUR FAX CONFIRMATION.

BEST REGARDS


**TRAFIGURA AG**

# TRAFIGURA

## TRAFIGURA AG BRANCH OFFICE STAMFORD

ONE STAMFORD PLAZA, 263 TRESSER BOULEVARD, 16TH FLOOR, STAMFORD, CT 06901, USA  TEL: +(1) 203 355 7200 – FAX: +(1) 203 355 7201

#### ****ALL CONTRACTUAL CORRESPONDENCE TO BE FAXED TO +44-207-170-7818****

| | | |
|---|---|---|
| TO | : | SIGMUND COMMUNECCI LIMITED |
| ATTN | : | BENEDICT PETERS |
| EMAIL | : | BENEDICT@SIGMUNDGROUP.COM |
| | | |
| CC | : | MITCHELL@SIGMUNDGROUP.COM |
| | | |
| CC | : | TRAFIGURA LTD. |
| ATTN | : | CONTRACT ADMINISTRATION: CAMERON BEVERIDGE / ALANA THOMPSON |
| FAX | | +44 207 170 7818 |
| E-MAIL | : | CONTRACTADMINISTRATIONS@TRAFIGURA.COM |
| | | |
| DATE | : | 23RD SEPTEMBER 2008 |
| | | |
| RE | : | OUR CONTRACT NO. 182921 |
| | | YOUR CONTRACT NO. (PLEASE CONFIRM) |

FURTHER TO OUR CONTRACT SENT FOR YOUR RECEIPT ON 18TH SEPTEMBER 2008, WE WOULD LIKE TO INCORPORATE THE FOLLOWING AMENDMENTS:

**8. PRICE**
PLEASE DELETE PARAGRAPHS 2, 3, AND 4, AND REPLACE WITH:

"THE BUYER AND SELLER SHALL MUTUALLY AGREE A QUOTATION PRIOR TO 30TH SEPTEMBER 2008. IF BUYER AND SELLER CANNOT MUTUALLY AGREE ON A QUOTATION THE PUBLISHED QUOTATION ON 30TH SEPTEMBER 2008 SHALL BE USED."

WE ARE PLEASED TO HAVE CONCLUDED THIS BUSINESS TRANSACTION WITH YOU AND LOOK FORWARD TO YOUR FAX CONFIRMATION.

BEST REGARDS

TRAFIGURA AG

## TRAFIGURA

## TRAFIGURA AG BRANCH OFFICE STAMFORD

ONE STAMFORD PLAZA, 263 TRESSER BOULEVARD, 16TH FLOOR, STAMFORD, CT 06901, USA  TEL: +(1) 203 355 7200 – FAX: +(1) 203 355 7201

#### ****ALL CONTRACTUAL CORRESPONDENCE TO BE FAXED TO +44-207-170-7818****

| | | |
|---|---|---|
| TO | : | SIGMUND COMMUNECCI LIMITED |
| ATTN | : | BENEDICT PETERS |
| EMAIL | : | BENEDICT@SIGMUNDGROUP.COM |
| | | |
| CC | : | MITCHELL@SIGMUNDGROUP.COM |
| | | |
| CC | : | TRAFIGURA LTD. |
| ATTN | : | CONTRACT ADMINISTRATION: CAMERON BEVERIDGE / ALANA THOMPSON |
| FAX | | +44 207 170 7818 |
| E-MAIL | : | CONTRACTADMINISTRATIONS@TRAFIGURA.COM |
| | | |
| DATE | : | 25TH NOVEMBER 2008 |
| | | |
| RE | : | OUR CONTRACT NO. 182921 |
| | | YOUR CONTRACT NO. (PLEASE CONFIRM) |

FURTHER TO OUR CONTRACT SENT FOR YOUR RECEIPT ON 18TH SEPTEMBER 2008, WE WOULD LIKE TO INCORPORATE THE FOLLOWING AMENDMENTS:


PLEASE REPLACE ALL REFERENCES OF "CIF" WITH "DES"


**1.  SELLER**
PLEASE REPLACE WITH:

"TRAFIGURA BEHEER B.V. AMSTERDAM,
BRANCH OFFICE LUCERNE,
ZÜRICHSTRASSE 5
CH-6002 LUCERNE
SWITZERLAND."


**8. PRICE**
FOR SAKE OF CLARITY, THE FINAL UNIT PRICE HAS BEEN DEEMED AS US DOLLARS 972.00 (NINE SEVEN TWO POINT ZERO ZERO) PER METRIC TONNE.


**17. TITLE**
PLEASE REPLACE ENTIRE CLAUSE WITH THE FOLLOWING:

"TITLE TO THE PRODUCT SHALL PASS FROM THE SELLER TO THE BUYER WHEN THE PRODUCT PASSES THE VESSEL'S PERMANENT FLANGE AT THE DISCHARGE PORT."


**18. RISK**
PLEASE REPLACE ENTIRE CLAUSE WITH THE FOLLOWING:

"RISK OF LOSS, CONTAMINATION OR DAMAGE TO THE PRODUCT SHALL PASS FROM THE SELLER TO THE BUYER WHEN THE PRODUCT PASSES THE VESSEL'S PERMANENT FLANGE AT THE DISCHARGE PORT."


WE ARE PLEASED TO HAVE CONCLUDED THIS BUSINESS TRANSACTION WITH YOU AND LOOK FORWARD TO YOUR FAX CONFIRMATION.

 BEST REGARDS

TRAFIGURA AG

# EXHIBIT 2

# TRAFIGURA

SIGMUND COMMUNECCI LIMITED          and          SIGMUND LIMITED PRODUCTS
5/7 DOCKYARD ROAD                                              5/7 DOCKYARD ROAD
APAPA-LAGOS                                                           APAPA-LAGOS
PORT HARCOURT                                                    PORT HARCOURT
LAGOS                                                                   LAGOS
NIGERIA                                                                NIGERIA

To be sent by email to:    odeweelias@yahoo.com
                           benedict@sigmundgroup.com
                           Mitchell@sigmundgroup.com
                           kunle@sigmundgroup.com
copy to:                   inquiries@sigmundgroup.com

20 May 2009

Pages  1+2

Dear Sirs

### OUTSTANDING DEMURRAGE CLAIMS – FURTHER DEMAND FOR PAYMENT OF US$1,148,426.40

We refer to our various demands for payment including the demands dated 20 March 2007, 17 November 2008, 30 January 2009 and lastly on 17 February 2009 for the sum of US$577,201.39. This sum remains unpaid and your opportunity to pay has long since lapsed on 24 February 2009.

We have repeatedly sought to give you more than ample time in which to pay our demurrage claim but you persistently continue to fail to pay.

We now issue you with a new demurrage invoice in relation to FREEJA BREEZE for the full amount of demurrage because of your failure to make any payment whatsoever on, before or even since 24 February 2009.

We hereby unequivocally withdraw our gesture of goodwill in which we had proposed to accept a reduced amount in relation to the FREEJA BREEZE demurrage because you have failed to accept our offer and pay the claim. As such, because of the lack of a satisfactory response to our prior gesture of goodwill we now are attaching a reinstated and reaffirmed FREEJA BREEZE demurrage invoice for the full amount of our demurrage claim due for prompt payment by close of business London time 27 May 2009.

You have until close of business London time 27 May 2009 to pay US$1,148,426.40 (i.e. US$127,201.39 +US$1,021,225.01). This is our final demand. If you fail to pay by close of business London time 27 May 2009 we will without further notice hand the matter over to our lawyers with instructions to take such steps for the recovery of the sums due to us and/or securing our claim as they consider appropriate. In addition to interest, we will hold you fully liable for any costs incurred in pursuing recovery proceedings against you.

Our rights remain reserved in full

Yours faithfully,

Yael Spier
Legal Counsel
For and on Behalf of
Trafigura Beheer B.V. and Trafigura AG.

# TRAFIGURA

## TRAFIGURA BEHEER B.V.

Amsterdam, Branch Office Lucerne

Postfach 4867, Zürichstrasse 5, 6002 Lucerne, Switzerland
Tel: +(41) 41 419 4343 - Fax: +(41) 41 419 4344 - Telex: 868001 TRAF CH

---

DATE                20/05/09

INVOICE NUMBER      64982

---

TO                  SIGMUND COMMUNECCI LIMITED
                    5/7 DOCKYARD ROAD
                    APAPA – LAGOS
                    PORT HARCOURT
                    LAGOS
                    NIGERIA


DEAL/TRADE          33475

INVOICE DESCRIPTION

M/T FREJA BREEZE DEMURRAGE INCURRED 15/09/08 – 25/10/08

TOTAL AMOUNT        $ 1,021,225.01

DUE DATE BY         27 May 2009

PLEASE PAY US DOLLARS BY TELEGRAPHIC TRANSFER IN IMMEDIATELY AVAILABLE
FUNDS TO:

BANKING DETAILS :

Please pay US Dollars by telegraphic transfer in immediately available funds:

TO:                     BNP PARIBAS NEW YORK
FAVOUR OF:              BNP PARIBAS, PARIS
                        3 RUE D'ANTIN
                        75078 PARIS
                        FRANCE
                        (SWIFT CODE BNPAFRPPMPE)
ATTN:                   Christophe Salmon
CREDIT OF:              TRAFIGURA BEHEER B.V.
ACCOUNT NO:             30004 05658 0000043877 J USD
IBAN:                   FR44 3000 4056 5800 0004 3877 J36
BIC/SWIFT:              BNPAFRPPMPE


FOR AND ON BEHALF OF

TRAFIGURA BEHEER B.V. AMSTERDAM,
LUCERNE BRANCH OFFICE

---

REGISTERED OFFICE:
GUSTAV MAHLERPLEIN 102, ITO TOWER, 1082 MA, AMSTERDAM, THE NETHERLANDS
MAILING ADDRESS: P.O. BOX 751 17, 1070 AC AMSTERDAM, THE NETHERLANDS
CHAMBER OF COMMERCE: 33236939



## DEMURRAGE CALCULATION

**Vessel: M/T Freja Breeze – Deal: 33475 – Inv.: 54982 – Grade: Jet**

**A. Discharge port: Off Cotonou**

| Date | Times (From – To) | Reason | Hours | Mins |
|---|---|---|---|---|
| 15/09/2008 | 0442 - 1042 | Time does not count - NOR Allowance | | |
| 15/09/2008 | 1042 - 2400 | Time counts | 13 | 18 |
| 16/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 17/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 18/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 19/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 20/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 21/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 22/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 23/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 24/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 25/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 26/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 27/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 28/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 29/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 30/09/2008 | 0001 - 2400 | Time counts | 24 | |
| 01/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 02/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 03/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 04/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 05/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 06/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 07/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 08/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 09/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 10/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 11/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 12/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 13/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 14/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 15/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 16/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 17/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 18/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 19/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 20/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 21/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 22/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 23/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 24/10/2008 | 0001 - 2400 | Time counts | 24 | |
| 25/10/2008 | 0001 - 2206 | Time counts - Cast off | 22 | 6 |
| | | | | |

**Used Laytime at Off Cotonou:**     971   24

| Time On Demurrage |
|---|
| 942.6692 hrs |

| 39.2778849 | Days at USD | 26,000.00 |
|---|---|---|

| Total Quantity |
|---|
| 39,086.25 MT |

| Discharged Quantity |
|---|
| 31,193.83 MT |

| Laytime Allowance |
|---|
| 28.7307619 hrs |

| Laytime Used | |
|---|---|
| 971 hrs | 24 mins |

| Demurrage Due to Trafigura |
|---|
| USD 1,021,225.01 |